The **DREXEL BURNHAM LAMBERT GROUP INC., Plaintiff,**

v.

**A.W. GALADARI and A.W. Galadari Commodities, Defendants.**

**No. 84 Civ. 2602 (CBM).**

United States District Court, S.D. New York.

May 20, 1985.

Richards O'Neil & Allegaert by Charles E. Dorkey, III, and Paul J. Hanly, Jr., New York City, for plaintiff.

Gaston Snow Beekman & Bogue by Carlton R. Asher, Jr., New York City, for defendants.

## OPINION

MOTLEY, Chief Judge.

In this diversity action, plaintiff Drexel Burnham Lambert Group, Inc. (Drexel) sues to collect for default on a Note for approximately $19 million of which approximately $12 million remains unpaid. Defendants, a major Middle Eastern banker and businessman and his company, executed the Note to cover losses on their commodities account with Drexel. This matter is before the court on plaintiff's motion for summary judgment and defendants' motion to dismiss on three different grounds. For the reasons set forth below, plaintiff's motion is denied and defendants' motion is granted.

FACTS:

The following facts appear to be uncontested. Defendant Galadari is a citizen and resident of Dubai, United Arab Emirates, where he is a major invester and businessman. Among his other activities, defendant has engaged in the buying and selling of commodities on United States exchanges. In connection with these commodities trading activities, Galadari and codefendant A.W. Galadari Commodities maintained an account with Drexel Burnham Lambert International, N.V. (Drexel International). When defendants' accounts had accumulated approximately $19,465,-00.00 in losses, Drexel International sought security for the debt, and on or about September 14, 1982 defendants negotiated, executed, and delivered in New York a secured promissory note in the principal amount. Defendants consented, through the Note, to have the Note's terms construed under New York law under the jurisdiction of this court. As collateral, defendants pledged, *inter alia*, 6,068,640 shares of stock in the Union Bank of the Middle East Ltd. (UBME).

Drexel International assigned the Note to Drexel on or about October 28, 1982, six weeks after the Note was executed and 17 months before the commencement of the present action. The terms of the Note required monthly payments in London or at another location specified by Drexel of $3 million with the final payment including accrued interest due on May 2, 1983. Defendants made partial payments totally approximately $7 million but have paid no principal since July, 1983 and no interest since March, 1984. This action was commenced on April 12, 1984 through service on defendants' designated agents in New York, and defendant Galadari has also been personally served in Dubai.

On or about April 17, 1984, H.E. Sheikh Maktoum Bin Rashid Al Maktoum, Crown Prince and Deputy Ruler of Dubai, issued Decree No. 3 of 1984. The Decree establishes a Committee of Receivers to manage defendants' assets and effect an orderly liquidation and winding down of his affairs.

Although plaintiff asserts that this bankruptcy-like process was instituted in direct response to this action in an attempt fraudulently to erase Drexel's debt, defendant asserts that the appointment of the Committee was simply the latest in a series of actions taken by the government of Dubai to head off economic disaster threatened by the collapse of defendant Galadari's financial empire, and to ensure the fair settlement of claims against defendants' assets. In order to stave off a collapse of UMBE, the government purchased defendants' holdings and took over the bank.

Defendant moves to dismiss this action on three separate grounds: 1) That plaintiff had the Note assigned to it by its subsidiary in a collusive attempt to confer jurisdiction on this court in violation of 28 U.S.C. section 1359; 2) that the act of state doctrine prevents an American court from challenging a decree issued by a foreign sovereign; and 3) that principles of international comity require American courts to defer to the comprehensive liquidation procedure already underway in Dubai.

Plaintiff argues that defendants merely seek to obfuscate a simple case of default on a debt. Plaintiff maintains that the Decree violates American public policy and constitutes a fraudulent attempt to exclude Drexel's debt in two specific ways: First, by redefining a security interest so as to remove Drexel's preference, and second, by removing the UBME shares from defendants' assets and thereby alienating plaintiff's collateral. Therefore, plaintiff argues that international comity and the act of state doctrine should not be invoked to shield defendants from a legitimate creditor.

As to jurisdiction, plaintiff alleges two valid business purposes for the assignment of the debt by Drexel International, a Netherlands Antilles corporation, to its American parent company. First, plaintiff asserts that given Drexel International's modest capitalization, carrying such a large Note would hurt the company's credibility with potential customers. Second, in the event that the debt wasn't paid, Drexel

says that it wanted the parent company to have the American tax advantages of the bad debt.

DISCUSSION:

### Jurisdiction

Before addressing any other grounds for dismissal, this court must determine that it has jurisdiction over the subject matter of the instant action. Jurisdiction is here alleged on the basis of diversity, with plaintiff, a Delaware corporation with offices in New York, suing two foreign defendants. However, prior to the assignment of the debt by Drexel International to Drexel, this suit would have been one between two foreign parties, and therefore not within the diversity jurisdiction of this court.

■ Plaintiff has the burden of asserting complete diversity. However, defendants argue that plaintiff must also bear the burden of rebutting a presumption of collusiveness arising because the debt was assigned by a completely controlled subsidiary to its parent. This presumption has been recognized where a debt is assigned to a subsidiary whose only business is to obtain jurisdiction and sue on the debt. *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469 (2d Cir.1976). Here, however, the debt was assigned by a legitimate, functioning subsidiary company to its parent for what seem at least facially to be valid business purposes. In light of these purposes, and in the absence of more particularized allegations of improper motive, this court concludes that plaintiff has carried its burden of demonstrating diversity. The assertion that the assignment was made in a collusive attempt to confer jurisdiction is further undercut by plaintiff's observation that the assignment was made a mere six weeks after execution of the Note but 17 months before the filing of this action. This court therefore has jurisdiction over the present action.

### Act of State Doctrine

■ The court will next consider defendants' argument that the act of state doctrine requires this court to honor the Dubai decree. Although the act of state doctrine is not jurisdictional, *Allied Bank International v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 520 (2d Cir.1985), it does preclude a court from examining the validity of a foreign act. Therefore, if it applies in this case, the court would be prevented from deciding whether or not the acts of Dubai deserved the protection of international comity.

■ The act of state doctrine was originally grounded in principles of sovereign immunity. *See Underhill v. Hernandez*, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897) ("Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory."). In its modern incarnation, however, the doctrine focuses on the balance of power between the three branches of our own government, and in particular the danger that the judiciary might interfere with the dominant role of the executive branch in the conduct of foreign affairs. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423, 84 S.Ct. 923, 937, 11 L.Ed.2d 804 (1964). The doctrine does not take the form of an absolute or inflexible rule, but rather requires a careful case-by-case analysis to determine if, in a particular situation, the conduct of foreign affairs by the executive branch is likely to be vexed or hindered by judicial review of the acts of a foreign government. *Allied Bank*, 757 F.2d at 521; *Libra Bank, Ltd. v. Banco Nacional de Costa Rica*, 570 F.Supp. 870, 877 (S.D.N.Y.1983).

■ As a general matter, however, the act of state doctrine only applies to acts occurring within the state's territorial boundries, *Allied Bank*, 757 F.2d at 521, because it is usually only when the state has the actual power to complete the action at issue within its own borders that the state can be said to have a reasonable expectation of dominion over the matter. *Libra Bank*, 570 F.Supp. at 883–84. It is, in turn, only when the state has such an expectation that judicial interference with

118

its acts tends to vex our relationship with the foreign government. *Id.*

[W]hen a foreign government performs an act of state which is an accomplished fact, that is when it has the parties and the *res* before it and acts in such a manner as to change the relationship between the parties touching the *res*, it would be an affront to such foreign government for the courts of the United States to hold that such act was a nullity.

*Tabacalera Severiano Jorge, S.A. v. Standard Cigar Company*, 392 F.2d 706, 715 (5th Cir.), *cert. denied*, 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968). When either the parties or the res is not within the foreign state's domain, the state cannot expect such exclusive control.

Because of this extraterritorial limitation, courts in this circuit have declined to apply the act of state doctrine in cases involving interference by foreign governments with debts when the situs of the debt is elsewhere than in the foreign state. *See, e.g., Allied Bank*, 757 F.2d at 521; *Libra Bank*, 570 F.Supp. at 882. In its recent *Allied Bank* opinion, the Second Circuit applied both traditional situs factors and a more specialized act of state analysis in determining that the debt in question had its situs in the United States. "[T]he situs of a debt for act of state purposes .... depends in large part on whether the purported taking can be said to have 'come to complete fruition within the dominion of the [foreign] government.' *Tabacalera*, 392 F.2d at 715–16." *Allied Bank*, 757 F.2d at 521.

■ Under either version of the test, the situs of the debt in the case at bar is other than Dubai. First of all, the alleged "taking," in this case—the government decree freezing payment of Galadari's debts—could not "come to complete fruition" in Dubai. It matters not that the decree itself was executed within the borders of Dubai, since the act of state doctrine looks to actual dominion over property rather than to the mere execution of official documents. *Libra Bank*, 570 F.Supp. at 878. Just as the government of

Costa Rica could not extinguish the obligation of Costa Rican banks to make payments in United States dollars in New York, *see Allied Bank*, 757 F.2d at 521, the government of Dubai cannot demand the absolute deference of the act of state doctrine for its attempts to alter the obligation of defendants to make payments in United States dollars in London.

Moreover, under traditional situs analysis, the situs of Galadari's debt to Drexel is certainly not Dubai. Defendants negotiated, executed, and delivered the Note in New York, consented to the jurisdiction of this court and to the construction of the Note in accordance with New York law. Although payment was to be made in London, the place of payment was subject to change at Drexel's discretion. In any event, whether the situs of the debt is London or New York, it is certainly not Dubai. The act of state doctrine, therefore, does not apply to these facts, and the court is free to proceed to a consideration of defendants' international comity arguments.

*International Comity*

■ In *Canada Southern Railway Co. v. Gebhard*, 109 U.S. 527, 539, 3 S.Ct. 363, 371, 27 L.Ed. 1020 (1883), the Supreme Court held that the "true spirit of international comity" required American courts to defer to a Canadian bankruptcy procedure that blocked the pursuit of individual claims. In *Clarkson Co. v. Shaheen*, 544 F.2d 624, 631 (2d Cir.1976), the Court of Appeals held similarly, and added that allegations of fraud interposed to defeat comity must be demonstrated by "clear and convincing evidence." These cases establish a presumption that American courts should defer to bankruptcy proceedings in other countries which are essentially fair. Under New York law as well, foreign decrees and proceedings will be given respect under principles of international comity in the absence of significant countervailing public policy reasons, even if the result under the foreign proceeding would be different than under American law. *Watts v.*

*Swiss Bank Corp.*, 27 N.Y.2d 270, 279, 265 N.E.2d 739, 744, 317 N.Y.S.2d 315, 322 (1970). *See also Intercontinental Hotels Corporation v. Golden*, 15 N.Y.2d 9, 13, 203 N.E.2d 210, 211, 254 N.Y.S.2d 527, 529 (1964) (international comity applies unless it would require "approval of a transaction which is inherently vicious, wicked, or immoral, and shocking to the prevailing moral sense"). Therefore, even when the act of state doctrine does not apply for reasons of extraterritoriality, quasi-judicial proceedings in foreign states are entitled to presumptive respect.

Plaintiff argues that the Dubai receivership procedure, unlike the American-style bankruptcy procedures approved in previous cases, is so unfair and inconsistent with American law and policy as to be beyond the scope of international comity. The court disagrees. Unlike the unilateral foreign expropriations and repudiations of debt which, when beyond the scope of the act of state doctrine, have been accorded little respect in American courts, *Allied Bank; Libra Bank*, the Dubai procedure is consistent with the basic premises and policies of American and British bankruptcy law. Faced with a national crisis over the acute liquidity problems of defendants, Dubai undertook to freeze all debt payments, centralize the management of defendants' affairs, and effect an orderly liquidation of defendants' assets. Such a procedure is certainly not facially unfair, and evidence submitted of censorship in Dubai regarding news of the receivership, while suggesting attitudes towards free press guarantees quite different from our own, does not automatically suggest inherent unfairness in the Dubai proceedings.

Plaintiff's more specific arguments for the fundamental unfairness of the Dubai proceedings fail to convince the court. The only specific evidence that the Dubai proceedings were initiated or shaped in direct response to this lawsuit is contained in the affidavit of Thomas Hill, a lawyer for Drexel, who relates the hearsay statement of David Murrell, a partner in Peat, Marwick, Mitchell & Co., British Chartered Accountants who had advised the Committee of Receivers. Hill claims that Murrell told him that the receivership decree was issued in direct response to the present lawsuit and in an attempt to exclude Drexel's debt. In an affidavit filed in response, however, Murrell categorically denies that he made such statements. That the Decree includes a definition of a security interest that excludes plaintiff's collateral does necessarily mean that it was designed solely in response to this suit, and it does not make the receivership proceeding inherently unfair. International comity is not reserved for foreign proceedings that obtain results identical to those under American law.

Plaintiff further argues that the government, in taking over UBME and removing the pledged bank stock from the universe of available Galadari assets, created an unfair preference which harmed plaintiff. Defendants argue, more pursuasively, that the government takeover of the bank was necessary to avoid national financial disaster and dissipation of all of defendants' assets, and point out that the cash value of the stock was paid into the receivership estate. Moreover, defendants suggest that plaintiff would not even have a security interest under American law because Galadari lacked the authority to pledge the assets in question on behalf of A.W. Galadari Commodities.

Plaintiff seeks to build a case out of definitional discrepancies between the Dubai decree and American bankruptcy law, but it is clear that in its basic premises and goals, the Dubai proceeding is consistent with American law and policy. Absent more pursuasive and particularized evidence that the Dubai proceedings are fraudulent or in some way fundamentally unfair, these foreign proceedings are entitled to deference from American courts. Defendants' motion to dismiss this case on the ground of international comity therefore is granted. Plaintiff's motion for summary judgment is denied.