**The DREXEL BURNHAM LAMBERT GROUP INC., Plaintiff-Appellant, Cross-Appellee,**

v.

**A.W. GALADARI and A.W. Galadari Commodities, Defendants-Appellees, Cross-Appellants.**

**Nos. 85–7466, 85–7532.**

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1985.

Decided Dec. 2, 1985.

---

Charles E. Dorkey, III, New York City (Richards O'Neil & Allegaert, Paul J. Hanly, Jr. and Edward L. Powers, New York City, of counsel), for plaintiff-appellant, cross-appellee The Drexel Burnham Lambert Group Inc.

Carlton R. Asher, Jr., New York City (Gaston Snow Beekman & Bogue, Richard E. Nathan and Donald R. Korobkin, New York City, of counsel), for defendant-appellee, cross-appellant the Committee of Receivers for A.W. Galadari and A.W. Galadari Commodities.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND and MESKILL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

The Drexel Burnham Lambert Group Inc. (Drexel) appeals from a judgment of the United States District Court for the Southern District of New York (Motley, C.J.) granting the motion of the Committee of Receivers for defendants A.W. Galadari and A.W. Galadari Commodities (Commodities) to dismiss this action on the ground of international comity. 610 F.Supp. 114. The Committee cross-appeals from the judgment insofar as it denied the Committee's motion to dismiss on the grounds of lack of subject matter jurisdiction and the act-of-state doctrine. Because we are unable to determine from the present record whether dismissal based on comity was warranted, we vacate the part of the district court's judgment that granted the Committee's motion to dismiss and remand for further development of the record on the comity issue. As to the balance of the judgment dealing with the jurisdictional and act-of-state issues, we affirm.

Prior to 1983, Galadari, a citizen of Dubai, United Arab Emirates, and Commodities, a partnership managed by Galadari, were speculators in commodities on United States exchanges. They conducted much

of their speculative activities through accounts maintained with Drexel Burnham Lambert International, N.V. (Drexel International), a wholly-owned foreign subsidiary of Drexel, a Delaware corporation with offices in New York. In 1982, Galadari and Commodities gave Drexel International a promissory note for $19,465,000 to cover substantial investment losses they had incurred. This note was executed and delivered in New York, and its terms were to be construed under the laws of New York. As collateral, Galadari pledged 6,068,640 shares of Class B Capital Stock of the Union Bank of the Middle East (Union), which then was one of the largest banks in the United Arab Emirates. Galadari controlled the holding company that owned some forty-six percent of Union's shares. He also was Chairman of Union's Board of Directors, a position he held until late 1983.

On October 28, 1982, Drexel International assigned the note to Drexel. In July 1983, after partial payments totaling around $7,000,000 had been made, the payors defaulted in payments of principal; in March 1984, they discontinued payments of interest. On April 12, 1984 Drexel commenced this action to recover on the note by serving Galadari's and Commodities' designated agents in New York; Galadari also was served personally in Dubai.

Neither Galadari nor Commodities appeared in the action. Instead, a Committee of Receivers, appointed with respect to the defendants' assets and financial affairs by a decree of the Government of Dubai, dated April 17, 1984, purported to answer on their behalf. In addition to general denials, the Committee's answer set forth twenty-five affirmative defenses, including failure to state a claim, absence of necessary parties, failure to mitigate damages, contributory negligence, assumption of the risk, estoppel, waiver, ratification, lack of reliance, lack of standing, the statute of frauds, laches, failure to properly plead, lack of personal jurisdiction, insufficient service of process, forum non conveniens, account stated, accord and satisfaction, collusive assignment, the act-of-state doctrine, and comity. As we listened to the subse-

quent arguments of the Committee's counsel with respect to comity, we could not help but recall that it was he who signed this pleading, certifying thereby that "to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Fed.R.Civ.P. 11. The answer demanded judgment dismissing the complaint with or without prejudice, together with costs, disbursements and attorneys fees.

On May 24, 1984, Drexel moved for summary judgment on the note. Neither the two named defendants nor the Committee of Receivers opposed Drexel's motion on the merits. Instead, the Committee moved to stay or dismiss the action on three grounds—lack of subject matter jurisdiction, the act-of-state doctrine and international comity. Although the district court denied the part of the Committee's motion that was based on the absence of subject matter jurisdiction and the act-of-state doctrine, it dismissed Drexel's complaint on the ground of international comity. 610 F.Supp. at 119. The court reached this decision without an evidentiary hearing, relying solely on affidavits.

According to the Committee's affidavits, on April 16, 1984 (four days after the commencement of this lawsuit), the Government of Dubai purchased all of Galadari's Union shares, purportedly including those held by Drexel as collateral security. One day later, H.E. Sheikh Maktoum Bin Rashid Al Maktoum, Crown Prince and Deputy Ruler of Dubai, issued a decree, which established a Committee of Receivers to liquidate the assets of Galadari and his various companies and prescribed the general guidelines pursuant to which the Committee was to effect the liquidation.

Under those guidelines, Drexel's promissory note fails to qualify as a secured debt on two grounds. First, the decree explicitly excludes all Union shares from the universe of Galadari assets, i.e., the receiver-

ship estate. Second, the decree recognizes as secured debt only those securities in the possession of a claimant that were notarized and registered, if capable of registration, and it appears that the Union shares pledged to Drexel were neither notarized nor registered.

The Committee maintains that the decree was simply one in a series of steps taken by the Dubai government to head off the economic disaster threatened by the collapse of the Galadari financial empire. Through that emergency measure, the Committee maintains, Dubai seeks to ensure the equitable distribution of Galadari's assets in a manner consistent with the laws of both the United States and Dubai.

Drexel contends, on the other hand, that the Dubai decree is simply a fraudulent attempt to deprive Drexel of its security interest in the pledged Union shares and, as such, deserves no deference in the United States courts. According to Drexel, the decree's double-barreled exclusion of Drexel's security interest runs counter to both United States law and policy and preexisting Dubai law. Drexel contends further that, in contrast to the procedure under the laws of the United States, the Committee will function in the dual role of a bankruptcy trustee and a bankruptcy court and its actions will be subject to very limited appellate review. Moreover, says Drexel, the Dubai decree makes no provision for a meeting or committee of creditors or for notice of sale of the debtor's property. In view of the parties' conflicting claims, the district court should have inquired more fully into whether the treatment Drexel could expect to receive from the Dubai Committee comported with this Country's notions of fairness and due process before it abstained in favor of the Committee.

As we have observed only recently, "American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." *Cunard Steamship Co. Ltd. v. Salen Reefer Services AB*, 773 F.2d 452, 458 (2d Cir.1985). However, there are exceptions and limitations to this policy. In New York, whose law controls this diversity action, courts will defer to an alien bankruptcy proceeding only so long as the foreign authority has jurisdiction over the bankrupt and "the foreign proceeding has not resulted in injustice to New York citizens, prejudice to creditors' New York statutory remedies, or violation of the laws or public policy of the state." *Clarkson Co. v. Shaheen*, 544 F.2d 624, 629 (2d Cir.1976); *see also Allied Bank International v. Banco Credito Agricola De Cartago*, 757 F.2d 516, 522–23 (2d Cir.), *cert. dism.*, —— U.S. ——, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985).

In response to Drexel's suit upon the promissory note, the Committee appeared generally and asserted twenty-five affirmative defenses. The party asserting an affirmative defense usually has the burden of proving it. *See, e.g., Howard v. Green*, 555 F.2d 178, 181 (8th Cir.1977); *Organizations United For Ecology v. Bell*, 446 F.Supp. 535, 546 (M.D.Pa.1978); *Blunt v. Barrett*, 124 N.Y. 117, 119, 26 N.E. 318 (1891); *Birnbaum v. Birnbaum*, 70 Misc.2d 462, 464–65, 333 N.Y.S.2d 890 (1972), *aff'd*, 76 Misc.2d 1087, 352 N.Y.S.2d 600 (1973). This rule has particular cogency where the facts in support of the defense are peculiarly within the knowledge of the party asserting it. *See United States v. New York, N.H. & H.R.R.*, 355 U.S. 253, 256 n. 5, 78 S.Ct. 212, 214 n. 5, 2 L.Ed.2d 212 (1957); *Browzin v. Catholic University of America*, 527 F.2d 843, 849 n. 12 (D.C.Cir.1975). However, the district court appeared to hold, 610 F.Supp. at 119, that the Committee's affirmative defense of comity imposed upon Drexel the burden of proving its inapplicability, and Drexel met with a stone wall in its efforts to establish the facts through the ordinary process of discovery and factfinding in the district court. Despite the Committee's general appearance in the action, which enabled it to conduct discovery, Fed.R. Civ.P. 34, and to appeal to this Court, *United States v. LTV Corp.*, 746 F.2d 51, 53 (D.C.Cir.1984), the Committee refused to answer a single Drexel interrogatory, arguing that it was not a party to the action.

Moreover, although the Committee purported to answer Drexel's complaint "on behalf of Galadari and Commodities", it refused to produce Galadari for deposition. As a result, Drexel never was afforded even the barest opportunity to determine the fairness of the proposed Dubai proceeding. This Court also was thwarted in its efforts to discover the facts. When the Committee's counsel was questioned at oral argument, he could give no specifics as to the status and further course of the proposed liquidation.

▪ Because the Dubai decree appears to be Dubai's first attempt to frame an insolvency law, our courts have had no experience with Dubai bankruptcy practices and procedures. In that respect, this case is unlike *Clarkson Co. v. Shaheen, supra,* 544 F.2d 624, relied upon by the court below. In *Clarkson,* this Court gave deference to proceedings in Canada, "a sister common law jurisdiction with [bankruptcy] procedures akin to our own." *Id.* at 630. Here, the district court is sending Drexel into uncharted territory. In fairness to Drexel, therefore, it should have been afforded reasonable discovery and an evidentiary hearing.

Although the Committee did not bring an ancillary bankruptcy proceeding under 11 U.S.C. § 304, that section provides guidance in this area by analogy. Under section 304(b), if a party in interest controverts the section 304(a) petition, the court can enjoin the continuation of an action only after a trial or hearing. The court then must decide whether to grant relief on the basis of the factors enumerated in section 304(c). *See In re Culmer,* 25 B.R. 621 (Bankr.S.D.N.Y.1982). In addition, general case law suggests that, when there are disputed issues of material fact, a motion to dismiss an action on the basis of international comity should not be granted without an evidentiary hearing. *See Papaioannoiu v. Hellenic Lines, Ltd.,* 569 F.Supp. 724 (E.D.Pa.1983); *cf. Petrol Shipping Corp. v. Kingdom of Greece,* 332 F.2d 370 (2d Cir.1964) (in banc) (per curiam) (district court instructed to decide issue of sover-

eign immunity only after full evidentiary hearing); *Federal Republic of Germany v. Elicofon,* 358 F.Supp. 747, 752–53 (E.D.N.Y.1972) (hearing ordered by district court to determine whether East German museum sufficiently independent of unrecognized East German government to sue in United States Courts), *aff'd sub nom. Kunstsammlungen zu Weimar v. Elicofon,* 478 F.2d 231 (2d Cir.1973), *cert. denied,* 415 U.S. 931, 94 S.Ct. 1443, 39 L.Ed.2d 489 (1974). We conclude that the facts relating to the Dubai proceedings and its consonance with domestic law and public policy were sufficiently in dispute to warrant further inquiry.

▪ Turning briefly to the cross-appeal, we conclude that the district court correctly rejected the Committee's alternative arguments for reversal. Because the Galadari note was assigned to Drexel within six weeks of its execution but seventeen months prior to the bringing of suit, and because the assignment was for at least facially valid business purposes, 610 F.Supp. at 117, the district court did not err in finding that its jurisdiction was not invoked in a collusive fashion in violation of 28 U.S.C. § 1359.

▪ The district court also refused correctly to use the act-of-state doctrine as a basis for dismissing the complaint. 610 F.Supp. at 117–18. The terms of the note provide that both the principal and interest are payable in United States dollars at Drexel International's London office or any other place designated by Drexel International. As a result, the situs of the debt is not in Dubai, and the act-of-state doctrine does not apply. *See Allied Bank International v. Banco Credito Agricola De Cartago, supra,* 757 F.2d 516, 521; *Garcia v. Chase Manhattan Bank, N.A.,* 735 F.2d 645, 650 n. 5 (2d Cir.1984).

The part of the district court's judgment that dismissed Drexel's complaint on the ground of comity is vacated, and the matter is remanded to the district court for further proceedings relative to the affirmative defense of comity consistent with this opinion. The part of the district court's

judgment that denied the Committee's motion to dismiss on the grounds of collusive jurisdiction and the act-of-state doctrine is affirmed.