**ECKERT INTERNATIONAL, INC., Plaintiff,**

v.

**GOVERNMENT OF the SOVEREIGN DEMOCRATIC REPUBLIC OF FIJI, Defendant.**

Civ. A. No. 93–CV–457.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 24, 1993.

Joseph Buford Tompkins, Jr., Sidley & Austin, Washington, DC, for plaintiff.

Nelson Joel Kline, Kline and Joseph, Washington, DC, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

### I.

This diversity contract action against a foreign government presents the threshold question whether a private American corporation's breach of contract claim against the Sovereign Democratic Republic of Fiji ("Fiji") is barred by sovereign immunity, or is otherwise nonjusticiable by virtue of the act of state or political question doctrines. For the reasons set forth here, the Court concludes that the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*, does not shield defendant Fiji from liability because Fiji's contract with plaintiff Eckert International, Inc. ("Eckert") falls under the FSIA's exceptions for waiver and commercial activity. Further, because the act of state and political question doctrines do not apply to this contract, Fiji's Rule 12(b)(6) motion to dismiss must be denied.

Also before the Court are Fiji's motions for certification under 28 U.S.C. § 1292(b) and for a stay pending appeal on the sovereign immunity claim and Eckert's motion for certification that the case proceed to trial. Fiji's motion for § 1292(b) certification is denied because the act of state and political question arguments do not constitute substantial claims likely to succeed. Eckert's motion for certification that the case proceed to trial is denied because Fiji's FSIA immunity arguments, while unpersuasive here, cannot be said to be frivolous. And finally, it follows that Fiji's motion for a stay pending appeal must be denied as moot because Fiji's

interlocutory appeal divests this Court of jurisdiction pending resolution of the appeal.

## II.

In 1988, Fiji and Eckert entered into a three-year contract under which Eckert was to provide Fiji with government and public relations consulting services in Washington, D.C. in return for payment of $250,000 per year. Substantially all of Eckert's services under the contract were to be performed in the Washington area, and the contract itself contained a provision stating that Virginia law governed any questions of interpretation.[1] Both parties apparently performed their obligations satisfactorily for the three year period. In 1991, the contract was renewed, without change, for an additional three years.

Both the 1988 and 1991 agreements were signed by the Prime Minister of Fiji, Ratu Sir Kamisese Mara ("Ratu Mara"). As with the 1988 contract, the parties apparently performed their obligations satisfactorily for the first year of the 1991 contract. Then, in 1992 Sitiveni Rabuka succeeded Ratu Mara as Prime Minister and Rabuka's new government terminated the contract and refused to pay Eckert for the two years remaining under the 1991 contract. Thereafter, Eckert sued Fiji for breach of contract, claiming that Fiji terminated the contract without cause or legal justification and therefore owes Eckert $500,000, the total remaining payments due under the 1991 agreement. Fiji responded by moving to dismiss on the basis of sovereign immunity, the act of state doctrine, and the political question doctrine.

## III.

The FSIA establishes the scope of sovereign immunity for foreign states in United States courts.[2] Foreign states are entitled to immunity from suit unless one of the FSIA's specific exceptions applies. 28 U.S.C. § 1604; *see also Republic of Argentina v.*

*Weltover, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2160, 2164, 119 L.Ed.2d 394 (1992). Two of these exceptions, waiver and commercial activity, are at issue here.

■ The "waiver" exception provides that foreign states lose their claim to sovereign immunity in any case

"in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver...." 28 U.S.C. § 1605(a)(1).

Eckert contends that Fiji waived its immunity when it agreed to the "choice of law" clause contained in the consulting contract. Although the FSIA does not define waiver "by implication," the Act's legislative history makes clear that implicit waivers occur in "cases where a foreign state ... has agreed that the law of a particular country should govern a contract." H.R.Rep. No. 1487, 94th Cong., 2d Session 18, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617. Courts have found this legislative history persuasive and have therefore consistently held that contractual choice of law clauses constitute waiver of immunity "by implication" in claims for breach of contract. *See Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fid., Ltd.,* 689 F.Supp. 1340, 1351 (S.D.N.Y.1988) (holding that the naming of New York as the forum in an arbitration agreement acts as a waiver of immunity under the FSIA); *Marlowe v. Argentine Naval Comm'n,* 604 F.Supp. 703, 709 (D.D.C.1985) ("if the parties to a contract agree that the laws of one country will govern *contractual interpretations,* they have implicitly waived the defense of sovereign immunity") (emphasis added); *Ohntrup v. Firearms Center, Inc.,* 516 F.Supp. 1281 (E.D.Pa.1981) ("A waiver of sovereign immunity may be inferred from an agreement to arbitrate a dispute in another country or to refer disputes to the laws of

---

1. The provision reads:

   In the event of any controversy, this Agreement shall be construed and interpreted according to the laws of the state of Virginia in the United States which is the official corporate

headquarters of Eckert Associates, Inc. at the time of any such need of legal interpretation.

2. It is undisputed that Fiji is a "foreign state" within the meaning of the FSIA. *See* 28 U.S.C. § 1603(a), (b).

another country"); *see also Transamerica S.S. Corp. v. Somali Democratic Republic,* 767 F.2d 998, 1005 (D.C.Cir.1985) (Wald, J., concurring).

Fiji seeks to distinguish these decisions by noting that the choice of law provision found in the 1991 contract is different from those clauses recognized as waivers in the cases cited above. Specifically, Fiji notes that the clauses in the cited cases all contain language explicitly stating what law will "govern" the contract, while the choice of law clause in the 1991 contract merely states that Virginia law will be used to "construe" or "interpret" the contract. From this, Fiji argues that there is no waiver; instead, the reference to state law exists only to aid the parties in performing and interpreting the contract.

Fiji's argument is wholly unpersuasive. The FSIA choice of law waiver principle is based on the sensible notion that a choice of law provision specifically agreed to in a contract signals a foreign state's agreement to be sued on the contract. In this connection, it makes no difference whether the contract states it is "governed" by Virginia law or that it is to be "interpreted" in accordance with Virginia law. This difference in language cannot bear the weight of Fiji's argument. Indeed, no case cited by Fiji or found by the Court holds or suggests that a contractual choice of law provision that uses the term "govern" is a valid FSIA waiver, while one that uses the terms "interpret" or "construe" is not. Nor is this surprising for both choice of law formulations invite the inference that the parties, including the foreign state, contemplate legal enforcement of the contract. Were this not so, a choice of law provision would be unnecessary.[3]

■ Quite apart from the choice of law waiver, the FSIA's "commercial activity" exception operates here to preclude Fiji's immunity defense.[4] This exception differenti-

ates between a foreign state's public acts performed in its sovereign capacity and a foreign state's private acts performed as a market participant. *See Republic of Argentina v. Weltover, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992); *LeDonne v. Gulf Air, Inc.,* 700 F.Supp. 1400, 1407 (E.D.Va.1988). Yet, the FSIA itself does not draw a sharply defined, bright line between a foreign state's public and private acts. Instead, the statute provides only a somewhat question begging definition of "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). Significantly, however, the Act goes on to mandate that the focus in drawing the distinction between public and private acts must be on of the nature of the act performed rather than on its purpose. *Id.* The drafters of the FSIA emphasized the primacy of the nature of the act by noting that

> [T]he fact that goods or services to be procured through a contract are to be used for a public purpose is irrelevant; it is the *essentially* commercial nature of an activity or transaction that is critical. Thus, a contract by a foreign government to buy provisions or equipment for its armed forces or to construct a government building constitutes a commercial activity. H.R.Rep. No. 1487, 94th Congress, 2d Sess. 16, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6615.

*See also LeDonne v. Gulf Air, Inc.,* 700 F.Supp. 1400, 1407 (E.D.Va.1988).

Measured by this standard, Fiji's act in entering into the 1991 contract was plainly a private act for the consulting contract is "inherently commercial in nature" and is governed by the rules of the marketplace. *See Chisholm & Co. v. Bank of Jamaica,* 643 F.Supp. 1393, 1400 (S.D.Fla.1986) (holding that contract between private Florida corpo-

---

3. Moreover, it is important to recall that Fiji agreed to the choice of law provisions in the face of settled case law holding such provisions to be implicit waivers of immunity under the FSIA. Fiji was thus effectively on notice of the legal effect of such a provision. Had Fiji intended the provision to operate as no more than a guide to the parties, it was on notice of the need to make that intention explicit, which it failed to do.

4. 28 U.S.C. § 1605(a)(2). This exception holds that a foreign state is not immune from suit in any case in which the action is "based upon a commercial activity carried on in the United States...."

ration and bank wholly owned by Jamaican government was commercial in nature, regardless of the purpose behind it). Fiji's argument that its contract was governmental, rather than commercial, in nature because Eckert represented Fiji in its "political and diplomatic relationship" with the United States is unpersuasive. This reasoning mistakenly focuses on the contract's purpose, while ignoring its essentially commercial nature. Indeed, the 1991 contract and its predecessor are simply garden variety consulting contracts, no different from myriad other consulting contracts between organizations and lobbyists. Foreign states entering into such contracts cannot be permitted to claim immunity from suit on such contracts merely by arguing that the contract had some governmental purpose. Were this Court to hold otherwise, foreign states would be free to enter into essentially commercial contracts with domestic entities and then, relying on sovereign immunity, abandon their obligation whenever it suited them to do so. For example, a foreign state could enter into a contract with an American shipyard for the manufacture of battleships, then break the contract with impunity based on a claim that the revocation was a policy decision based on national security. The FSIA neither permits nor contemplates such a misuse of sovereign immunity. To the contrary, where, as here, a foreign state has entered into an essentially commercial contract for the performance of consulting services, it may not claim sovereign immunity under the FSIA.

### IV.

■ Fiji fares no better in its attempt to invoke the act of state doctrine. Under that doctrine, courts may not sit in judgment of a sovereign state's public acts performed within that state's boundaries. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (precluding American courts from inquiring into the validity of Cuban expropriation decree); *Un-*

*derhill v. Fernandez*, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897) (shielding Venezuelan military commander from liability for wrongs inflicted against American citizen during Venezuelan revolution). The doctrine's purpose is to prevent judicial pronouncements that would disrupt this country's foreign relations. *Sabbatino*, 376 U.S. at 428, 84 S.Ct. at 940; *see also Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976).

■ The act of state doctrine is typically characterized by two elements, neither of which is present here. First, the act undertaken by the foreign state must be public, and second, the act must be completed within the sovereign's territory.[5] Public and governmental acts of sovereign states, which are protected by the act of state doctrine, are distinct from states' private and commercial acts, which are not. In *Alfred Dunhill*, the Supreme Court emphasized this distinction, stating that the doctrine's principal purpose, preventing interference with international relations, would not be threatened by recognizing that commercial transactions of foreign sovereigns are not "acts of state." Justice White's words are instructive on this point:

> In their commercial capacities, foreign governments do not exercise powers peculiar to sovereigns. Instead, they exercise only those powers that can also be exercised by private citizens. Subjecting them in connection with such acts to the same rules of law that apply to private citizens is unlikely to touch very sharply on 'national nerves.' 425 U.S. at 704, 96 S.Ct. at 1866.

Fiji argues that its termination of Eckert's contract was a public act because only a government can appoint someone to serve as a political representative. Yet, a political appointment is not at issue here; rather, what is at issue is the performance or nonperformance of a private commercial contract

---

5. Even if these requirements were not met, courts could still apply the act of state doctrine because the "doctrine does not take the form of an absolute or inflexible rule, but rather requires a careful case-by-case analysis to determine if, in a particular situation, the conduct of foreign affairs by the executive branch is likely to be vexed or hindered by judicial review of the acts of a foreign government." *Drexel Burnham Lambert Group, Inc. v. Galadari*, 610 F.Supp. 114, 117 (S.D.N.Y.1985); *see also Liu v. Republic of China*, 892 F.2d 1419 (9th Cir.1989); *Allied Bank International v. Banco Credito Agricola de Cartago*, 757 F.2d 516 (2nd Cir.1985).

for lobbying services. Contracting with a private consultant is a commercial rather than a governmental act, and Fiji's termination of its contract with Eckert, whether or not motivated by Fijian political considerations, was nonetheless a private, rather than a public act. Therefore, the act of state doctrine's public act requirement is not met.

■ The second prerequisite of the act of state doctrine limits the doctrine's application to actions taken by a foreign sovereign *within its own territory. See W.S. Kirkpatrick v. Environmental Tectonics Corp.,* 493 U.S. 400, 409, 110 S.Ct. 701, 707, 107 L.Ed.2d 816; *Sabbatino,* 376 U.S. at 401, 84 S.Ct. at 926; *Liu v. Republic of China,* 892 F.2d 1419, 1432 (9th Cir.1989); *Chisholm & Co. v. Bank of Jamaica,* 643 F.Supp. 1393, 1403 (S.C.Fla. 1986); *Drexel Burnham Lambert Group, Inc. v. Galadari,* 610 F.Supp. 114, 117 (S.D.N.Y.1985), *aff'd in relevant part,* 777 F.2d 877 (2d Cir.1985). This territorial limitation is based on the rationale that

> "it is usually only when the state has the actual power to complete the action at issue within its own borders that the state can be said to have a reasonable expectation of dominion over the matter. It is, in turn, only when the state has such an expectation that judicial interference with its acts tends to vex our relationship with the foreign government." *Galadari,* 610 F.Supp. at 117–18.

This territorial requirement, like the public act requirement, is not met here. The 1991 contract explicitly noted that it was for services to be performed in this country, not Fiji. No doubt Eckert received instructions and payment in this country, as well as performed its services here. Fiji's argument to the contrary ignores the contract's essential nexus with this country, ignores that the contract was to be performed here, and focuses only on the situs of the decision to terminate or break the contract.

Specifically, Fiji's act of state argument focuses only on its contention that termination of the contract was based on a determination of Eckert's political loyalty and that this determination was made wholly within Fiji's territory of jurisdiction. This focus is too narrow. Foreign governments can always claim to have made decisions within their borders about matters beyond their borders. More particularly, foreign governments can always claim that the decision to reject or break a commercial contract was made entirely within their sovereign territory. Were this claim a sufficient basis for the operation of the act of state doctrine, foreign states would be free to violate commercial contracts at will, a result never intended by the doctrine and at odds with its purpose.[6] Thus, the situs of the decision to break or terminate a contract cannot, by itself, be a sufficient basis to invoke the act of state doctrine.

## V.

■ Fiji's attempt to invoke the protection of the political question doctrine also fails. That doctrine, founded on separation of powers principles, renders nonjusticiable those disputes involving intrinsically political questions. The Supreme Court, in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), established criteria for determining whether a case involves a political question. These criteria are:

> a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need of unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments

---

**6.** The Supreme Court made a similar point in *Alfred Dunhill:*

> "Repudiation of a commercial debt cannot ... be treated as an act of state; for if it were, foreign governments, by merely repudiating the debt before or after its adjudication, would enjoy an immunity which our government would not extend them under prevailing sovereign immunity principles." 425 U.S. at 698–99, 96 S.Ct. at 1863.

on one question. *Baker,* 369 U.S. at 219, 82 S.Ct. at 711.

Fiji's argument that its decision to terminate the 1991 contract is a nonjusticiable political question misreads and misconceives *Baker.* To begin, the political question doctrine is grounded in domestic Constitutional concerns. Specifically, the doctrine arises when "a matter has in any measure been committed by the Constitution to another branch of government, or [when] the action of that branch exceeds whatever authority has been committed...." *Id.,* 369 U.S. at 211, 82 S.Ct. at 707.[7] The dispute at bar does not involve conflicts between branches of the government, but rather a commercial contract dispute between a foreign government and a private U.S. company. The political question doctrine, established to protect the separation of powers, is generally inapplicable to such disputes.

But even conceding that the scope of the doctrine may extend beyond separation of powers concerns in rare circumstances,[8] these are not such circumstances. Contrary to Fiji's assertion, this case does not involve a "lack of judicially discoverable and manageable standards for resolving it." *Baker,* 369 U.S. at 219, 82 S.Ct. at 711; *see also Republic of Philippines v. Morcos,* 818 F.2d 1473, 1489 (9th Cir.1987). In fact, the reported cases are filled with standards to use in evaluating breach of contract claims, the essence of this matter. Conceding that this

may be so in general, Fiji argues that there are no manageable standards for resolving the unique contract issue presented here. Fiji contends that its decision to terminate Eckert's contract was based on Eckert's alleged violation of a "loyalty clause" in the contract[9] and that no standards exist to interpret breaches of loyalty clauses. This argument is unsound. Ample judicially discoverable standards exist for resolving breaches of loyalty, as for example between agents and principals.[10] The common law of agency provides standards which would be applicable in determining whether Eckert violated his duty of loyalty to Fiji.[11] Nor are these the only standards that might apply. It is still open to the parties to litigate what is intended by the loyalty clause, what duties and obligations it imposes on Eckert, whether Eckert violated the clause and, if so, whether the violation justified termination of the contract. There is no reason to believe that there is a lack of judicially discoverable and manageable standards applicable to these questions. The political question doctrine is simply inapplicable here.

## VI.

■ Fiji has appealed the Court's sovereign immunity ruling, relying correctly on settled authority allowing interlocutory appeals of immunity denials. *See* 28 U.S.C. § 1291; *see also Stena Rederi AB v. Comision de Contratos del Comite,* 923 F.2d 380,

---

7. In a subsequent case, Justice Brennan, the author of *Baker,* emphasized the importance of the first *Baker* factor, namely whether there is a "textually demonstrable constitutional commitment of the issue to a coordinate political department." *See Goldwater v. Carter,* 444 U.S. 996, 1006, 100 S.Ct. 533, 538, 62 L.Ed.2d 428 (1979) (Brennan, J., dissenting). Nothing of the sort is involved in this case.

8. In *Republic of Philippines v. Marcos,* 818 F.2d 1473 (9th Cir.1987), the Ninth Circuit applied the political question doctrine in a case without separation of powers concerns. There, the dispute was international and chiefly involved an act of state defense.

9. The clause in question reads:

4. Eckert International in addition hereby undertake and agree with the Government of Fiji that they will be at all times during the continuation in force of the agreement, as now re-

newed, observe and perform the terms and conditions set out thereunder and in particular:

\*   \*   \*   \*   \*   \*

(b) will in all matters act loyally and faithfully to the Government of Fiji.

10. *See, e.g., Bull v. Logetronics, Inc.,* 323 F.Supp. 115, 132–33 (E.D.Va.1971) (discussing standards by which to measure employee's duty of loyalty); *Byars v. Stone,* 186 Va. 518, 42 S.E.2d 847, 853 (1947) ("the agent or employee is bound to the exercise of the utmost good faith and loyalty toward his principal or employer").

11. *Cf. Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 49 (2nd Cir.1991) (holding that applicable standards in tort law constituted "judicially discoverable and manageable standards" in a claim against the Palestine Liberation Organization arising from hijackers' murder of plaintiff's decedent).

385 (5th Cir.1991); *Compania Mexicana de Aviacion, S.A. v. United States District Court,* 859 F.2d 1354, 1358 (9th Cir.1988); *Segni v. Commercial Office of Spain,* 816 F.2d 344, 346–47 (7th Cir.1987).

Section 1292(b) is a narrow exception to the final judgment rule of § 1291, to be used "only in extraordinary cases" to "avoid protracted and expensive litigation." *McKann v. Communications Design Corp.,* 775 F.Supp. 1506, 1534 (D.Conn.1991). This limited exception exists where the district court judge certifies that the issues "involved a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Fiji concedes that the act of state and political question issues are not final appealable orders under § 1291, but argues that the certification of these issues under 28 U.S.C. § 1292(b) is appropriate in order to consolidate the appeal of these issues with the pending immunity appeal.

More is required. Specifically, Fiji must show that there is a "substantial ground for a difference of opinion" concerning Fiji's political question and act of state positions. This is the achilles heel of Fiji's certification argument. There is no substantial ground for a difference of opinion on these questions. Fiji's arguments are wholly insubstantial and lacking in any direct or analogous case support. Certification of these issues is therefore inappropriate.

## VII.

▮▮▮▮ Anticipating the possibility that the political question and the act of state rulings would not be certified, Fiji has moved for a stay of further proceedings pending resolution of the immunity appeal. Eckert, in turn, has moved this Court to proceed to trial by certifying that Fiji's immunity appeal is frivolous. These motions are interdependent and are therefore considered together.

Analysis of these motions properly begins with the recognition that Fiji's § 1291 interlocutory appeal divests this Court of jurisdiction over the remaining matters.[12] This, however, does not leave district courts at the mercy of defendants who file frivolous interlocutory appeals for tactical reasons. If the appeal is deemed frivolous, the district court may certify that the case should proceed to trial.[13] *Chuman v. Wright,* 960 F.2d 104 (9th Cir.1992); *Stewart,* 915 F.2d at 577; *Apostol,* 870 F.2d at 1339. Therefore, the evaluation of Eckert's motion to proceed to trial must focus on whether Fiji's sovereign immunity appeal is properly deemed frivolous.

▮▮▮ The Fourth Circuit has suggested a standard for evaluating the frivolousness of interlocutory appeals. *See United States v. Head,* 697 F.2d 1200 (4th Cir.1982), *cert. denied* 462 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1367 (1983).[14] In order for an interlocutory appeal to be deemed frivolous, it must be both meritless and substantively inappropriate. Although Fiji's sovereign immunity arguments are unconvincing and con-

**12.** Because "[t]he trial is inextricably tied to the question of immunity. . . . [i]t makes no sense for trial to go forward while the court of appeals cogitates on whether there should be one." *Apostol v. Gallion,* 870 F.2d 1335, 1338 (7th Cir.1989). *See also Stewart v. Donges,* 915 F.2d 572, 576 (10th Cir.1990). For a discussion of the general rule that district courts and courts of appeal should not assert jurisdiction of a case simultaneously, see *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982); *United States v. Christy,* 3 F.3d 765, 1993 WL 331478, at 1–2, 1993 U.S.App. LEXIS 22354, at *4–5 (4th Cir.1993).

**13.** Courts may also certify cases to proceed to trial on grounds that the right to appeal has been forfeited. *See Apostol,* 870 F.2d at 1339. None

of the reasons cited for forfeiture of the right to appeal, however, apply to this case.

**14.** In *Head,* the Fourth Circuit evaluated interlocutory appeals on double jeopardy grounds. In finding the appeals to be frivolous, the panel declared that frivolousness "must embrace both a perception that a claim that is manifestly 'double jeopardy' in substantive content is wholly lacking in merit, and a perception that a claim advanced as one of 'double jeopardy' is manifestly not that in substantive content." *Id.,* at 1204–05. Because interlocutory appeals on double jeopardy grounds are commonly categorized with interlocutory appeals based on qualified or absolute immunity, *see, e.g., Chuman v. Wright,* 960 F.2d 104 (9th Cir.1992); *Apostol v. Gallion,* 870 F.2d 1335, 1338 (7th Cir.1989), the standard in *Head* can be applied in the immunity context.

trary to existing precedent, they cannot properly be deemed frivolous. Moreover, they are not at all substantively inappropriate. Apart from this, it is fair to note that the questions presented are not often litigated and that there is a relative paucity of controlling circuit precedent. Therefore, the Court denies Eckert's motion to certify the case to proceed to trial on the ground that the appeal is frivolous. Further, because this Court is divested of jurisdiction pending the determination of Fiji's sovereign immunity appeal, Fiji's motion for a stay pending appeal is denied as moot.

### VIII.

Fiji's motion to dismiss on grounds of sovereign immunity, act of state, and political question is denied.

Fiji's motion for certification under 28 U.S.C. § 1292(b) is denied because Fiji's arguments are insubstantial claims that are unlikely to succeed and that will not materially advance the ultimate termination of the litigation. Fiji's motion for a stay pending appeal is moot because this Court is divested of jurisdiction pending resolution of the § 1291 appeal. Eckert's motion for a certification that the case proceed to trial is also denied because Fiji's sovereign immunity claim cannot be deemed to be frivolous.

An appropriate order will issue.