

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-1994

# Phila. Gear, Corp v. Phila. Gear, Mexico, S.A.

Precedential or Non-Precedential:

Docket 94-1054

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Phila. Gear, Corp v. Phila. Gear, Mexico, S.A." (1994). *1994 Decisions*. Paper 230.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/230

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-1054


PHILADELPHIA GEAR CORPORATION

v.

PHILADELPHIA GEAR DE MEXICO, S.A.,

Appellant


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 91-06250)


Argued September 20, 1994

BEFORE:  GREENBERG, ROTH, and ROSENN, Circuit Judges

(Filed: December 29 1994)

Joan G. Dorgan (Argued)
Bruce A. Americus
Samuel W. Braver
Tarek F. Abdalla
Buchanan Ingersoll
Professional Corporation
600 Grant Street
58th Floor
Pittsburgh, PA 15219

Attorneys for Appellant


Kevan F. Hirsch (Argued)
Joseph A. Battipaglia
Eckert, Seamans, Cherin
& Mellott
1700 Market Street
Suite 3232
Philadelphia, PA 19103

OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Philadelphia Gear de Mexico, S.A., (PGMex) appeals from an order for summary judgment entered in favor of Philadelphia Gear Corporation (PGC).  The case raises significant questions regarding recognition of foreign judicial proceedings which, in light of the anticipated increase in international commercial transactions in North America, likely will become of increasing significance.  Inasmuch as we decide this case on procedural grounds, we only need summarize the factual background of the case.

Pursuant to an agreement dated March 5, 1968 (the "basic agreement"), PGC and several Mexican investors formed Philadelphia Gear Mexicana (PGM), with PGC owning 49% and the Mexican investors owning 51%.  PGM had two purposes: (1) to manufacture PGC's products in Mexico; and (2) to sell PGC products in Mexico.  The basic agreement provided that the Mexican investors would manage PGM and that, pursuant to a separate technical assistance agreement, PGC would provide technical assistance and licensing to enable PGM to manufacture

PGC's products.  The basic agreement was to last until 1999, and continue year-to-year thereafter.

The technical assistance agreement ("1968 technical agreement"), executed on March 15, 1968, provided, among other things that:  (1) PGC would train PGM's technical and sales personnel at PGC's plant in King of Prussia, Pennsylvania; (2) PGC would send engineers or technicians to supervise the installation of machinery and equipment in PGM's plant in Mexico; (3) PGC periodically would send qualified personnel to Mexico to assist PGM's manufacturing and selling; and (4) PGC periodically would supply PGM all available information and technical assistance required for the efficient manufacture and sale of the products covered by the agreement.  The 1968 technical agreement also granted PGM the exclusive right to use PGC's patents and trademarks in Mexico and provided that PGM would not have to pay a fee for the technical assistance so long as PGC remained a 49% shareholder in PGM.

Until 1973, PGM conducted its manufacturing and sales operation in a rented facility.  However, in 1973, two of the Mexican investors and PGC formed a Mexican corporation, MYB, S.A. (MYB), which constructed a manufacturing and sales facility in Mexico.  The Mexican investors owned 51% and PGC owned 49% in MYB.  In 1981, MYB changed its name to Philadelphia Gear de Mexico, S.A. (PGMex), and in 1987, PGM merged into PGMex, making it the sole surviving Mexican entity.  From 1968 through 1988, PGC and PGMex, including the latter's predecessors, executed various agreements governing their relationship.

In 1991, after a breakdown in their relationship, PGC filed a complaint against PGMex in the United States District Court for the Eastern District of Pennsylvania, seeking a declaration that, because PGC properly terminated a May 1, 1990 agreement ("1990 sales agreement") between PGC and PGMex, PGMex no longer had the right to use PGC's trademarks, to manufacture products from PGC's designs, to act as a PGC sales representative in Mexico, or to retain PGC's technical material. In response, PGMex filed a motion to dismiss on the basis of forum non conveniens which the district court denied. PGMex then filed an answer alleging that the 1990 sales agreement did not govern the parties' relationship. PGMex also filed a counterclaim in which it alleged that PGC breached its agreements with PGMex.

On July 20, 1993, PGC filed a motion for summary judgment both on its complaint and on PGMex's counterclaim and, on August 31, 1993, PGMex filed its opposition to the motion. On October 6, 1993, while the motion still was pending, the district court received a Letter Rogatory from a Mexican court, requesting that the district court either stay the case or transfer it to Mexico.[1] The Mexican court issued the letter at the request of PGMex which had instituted a suspension of payments proceeding in

---

[1]. PGMex recites in its brief that the Justice Department served the letter on the district court. Appellant's br. at 5. On the other hand, PGC indicates that the "Mexican Consulate" supplied the letter. Appellee's br. at 5. The parties, however, do not treat the method of service of the letter as significant on this appeal and thus we do not consider this discrepancy further, beyond noting that according to the district court's docket sheets, the consulate sent the letter to the court.

the Mexican court pursuant to the Mexican Bankruptcy and Suspension of Payments Laws (MBSPL).[2] PGC describes the suspension of payments proceeding as "somewhat analogous to Chapter 11" of the Bankruptcy Code. App. at 1068. PGMex accepts this description. Appellants' br. at 39.

On November 19, 1993, PGC filed a brief in opposition to the relief sought in the Letter Rogatory along with an opinion of a Mexican attorney contending that the Letter Rogatory was ineffective. On December 9, 1993, the district court entered summary judgment in PGC's favor on both the complaint and the counterclaim. At that time the court filed a comprehensive opinion which explained why the court was granting summary judgment but which did not mention the Letter Rogatory. On December 10, 1993, PGMex filed a brief in support of the Letter Rogatory with an opinion from a Mexican attorney asserting that the letter should be honored. PGC then moved to amend the judgment in a manner not material to this opinion. The district court granted that motion, vacated the judgment of December 9, 1993, and entered an amended final judgment on January 19, 1994. PGMex has appealed from the judgment of January 19, 1994.[3] PGMex challenges both the district court's refusal to extend comity to

---

[2]. We also note that in Remington Rand v. Business Sys. Inc., 830 F.2d 1260, 1262 (3d Cir. 1987), we indicated that a suspension of payment proceeding in the Netherlands was "the Dutch equivalent of reorganization under Chapter 11 of the United States Bankruptcy Code."

[3]. PGMex appealed from the judgment entered December 9, 1993, but filed an amended notice of appeal after the district court entered its amended judgment.

the Mexican court proceedings and its grant of summary judgment to PGC.

The district court had subject matter jurisdiction under 28 U.S.C. § 1332(a)(2), as PGC is incorporated in the United States, PGMex is a Mexican corporation, and the amount in controversy exceeds $50,000. We have appellate jurisdiction under 28 U.S.C. § 1291, as PGMex appeals from a final judgment.

## II. DISCUSSION

The initial, and indeed in light of our conclusions, the only issue we consider on this appeal is whether the district court abused its discretion by not granting the request in the Letter Rogatory that the court stay this case or transfer it to the Mexican court. Because we find that the district court abused its discretion by the procedure it followed in failing to execute the Letter Rogatory, we will not reach the merits of PGMex's appeal from the summary judgment. Instead, we will vacate the order for summary judgment without prejudice and remand this matter for further proceedings.

As we have indicated, the district court received the Letter Rogatory while the motion for summary judgment was pending. Yet, neither in its opinion granting the summary judgment, nor in any other opinion, did the district court express its reasons for declining to execute the Letter Rogatory. While PGC argues that the district court was not obliged to execute the letter and "[s]urely . . . considered the timing" of the letter's service in not honoring it, in fact we only can

guess as to the court's reasoning. Appellee's br. at 39 n.6. Furthermore, the court granted PGC's motion for summary judgment, thus implicitly declining to recognize the Letter Rogatory, before PGMex filed its brief in support of the letter. We thus make our analysis without knowing the reason for the court's refusal to honor the letter.

In general, "[u]nder the principle of international comity, a domestic court normally will give effect to executive, legislative, and judicial acts of a foreign nation." Remington Rand v. Business Sys. Inc., 830 F.2d 1260, 1266 (3d Cir. 1987). More specifically, we have stated that "[c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir. 1971) (citations and footnote omitted), cert. denied, 405 U.S. 1017, 92 S.Ct. 1294 (1972). Thus, a court may, within its discretion, deny comity to a foreign judicial act if it finds that the extension of comity "would be contrary or prejudicial to the interest of the" United States.

Accordingly, we review "the extension or denial of comity . . . by the abuse of discretion standard." Remington, 830 F.2d at 1266 (citations omitted). Consequently, when reviewing a denial of comity, we must determine whether a district court acted within its discretion if it concluded that "acceptance [of comity] would be prejudicial to the interest of the" United States. Therefore, inasmuch as we do not know why the court exercised its discretion as it did or, indeed, whether

it even recognized that it had discretion in considering whether to recognize the Mexican proceedings, unless we conclude that comity should have been denied as a matter of law we are constrained to remand this case to the district court to make appropriate findings.[4]

In making our inquiry into whether the letter could be rejected as a matter of law, we initially recognize that PGMex did not make a formal motion for a stay or transfer pursuant to the letter. We have found no case law dealing with whether comity can be granted to a foreign judicial act in the absence of a motion by a party to extend comity. This is perhaps not surprising as normally when a court decides whether to grant comity to a foreign judicial act, it rules in response to a motion by a litigant for a stay pending disposition of the foreign action.[5]

---

[4]. We do not mean to suggest that in every circumstance in which a district court exercises discretion it must explain the basis for its actions. Rather, we address only the situation before us. We are not distinguishing between state and federal law regarding comity, as the parties do not make any such distinction in their briefs. There may, however, be a distinction and the parties are free to address this issue on remand. We do observe that in this diversity action Pennsylvania law with respect to the substantive comity issues may apply but we do not reach that unbriefed issue. See Somportex, 453 F.2d at 440; Drexel Burnham Lambert Group v. Galadari, 777 F.2d 877, 880 (2d Cir. 1985).

[5]. For example, in Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 998 (2d Cir.), cert. denied, 114 S.Ct. 386 (1993), Allstate brought suit against, among others, a group of Australian corporations, alleging that the corporations violated United States securities laws. A month later, the corporations "were placed in liquidation by orders of the Supreme Court of New South Wales." The corporations and other defendants "moved to dismiss or stay the action on the basis of the ongoing liquidation proceeding in Australia." Allstate, 994 F.2d at 998.

Nevertheless, we conclude that the fact that PGMex did not make such a motion does not compel the conclusion that the district court should not have extended comity to the Mexican proceedings. In fact, we conclude that whatever might be true in other cases, the absence of a formal motion does not matter in this case. Our primary reason for this conclusion is that the Letter Rogatory served the same procedural function as a motion, as it informed the district court and the parties what relief was sought. Furthermore, the Mexican court had an institutional interest in having its proceedings recognized, as they are similar to Chapter 11 proceedings. Moreover, the district court, after receiving the letter, was free to set a briefing and/or hearing schedule for resolution of the issues raised by the letter. Finally, PGMex in effect did move to enforce the Letter Rogatory when it filed its brief in support of it.[6] While we do not suggest that a request in a brief always can be so treated, in this case we regard PGMex's brief as the functional equivalent of a motion. The totality of these circumstances convinces us that we should consider the comity issue on the same basis we would if PGMex had moved for the stay.

(..continued)
The district court "granted defendants' motion to dismiss, on the ground of comity, in favor of the ongoing liquidation proceeding in Australia." Id. The court of appeals affirmed, reasoning that the appellants' claims could be resolved in the Australian liquidation proceeding and dismissal would not violate United States law or policy. Id. at 998-99.


[6]. In its brief, PGMex indicates that the brief it filed in the district court on December 10, 1993, was timely under the rules of the district court. PGC does not dispute this point in its brief.

We next consider PGC's argument that "[n]either the voluminous Letter Rogatory nor PGMex provided the District Court with the information necessary to warrant an extension of comity."  Appellee's br. at 40.  In other words, PGC is suggesting that, as a matter of law, PGMex did not present a prima facie case for the extension of comity to the letter.  This implies that we should find the letter facially ineffective.  If we found that PGMex did not present a prima facie case for the extension of comity, we would affirm the district court's denial of comity.

We have stated that "[c]reditors of an insolvent foreign corporation may be required to assert their claims against a foreign bankrupt before a duly convened foreign bankruptcy tribunal."  Remington, 830 F.2d at 1271 (citing Cunard S.S. Co. v. Salen Reefer Serv. AB, 773 F.2d 452, 458-59 (2d Cir. 1985)).  In Remington, we had to determine, among other issues, whether the district court violated the principles of international comity by ordering a Dutch corporation, subject to a suspension of payments proceeding in the Netherlands, to turn over proprietary documents to a United States corporation and to account for proceeds it wrongfully obtained through the use of the materials.  Remington, 830 F.2d at 1267.  In addressing this issue, we cited the general comity principles that we set forth in Somportex:

> Comity is a recognition which one nation extends
> within its own territory to the legislative,
> executive, or judicial acts of another.  It is not
> a rule of law, but one of practice, convenience,
> and expediency.  Although more than mere courtesy

and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be prejudicial to the interest of the nation called upon to give it effect.

Remington, 830 F.2d at 1267 (quoting Somportex, 453 F.2d at 440).

Additionally, Remington set forth the comity considerations that apply specifically "[i]n the foreign bankruptcy context." Remington, 830 F.2d at 1267-68. More specifically, Remington recognized two competing policies in considering extending comity to a foreign bankruptcy proceeding. First, when the foreign bankruptcy court shares our "fundamental principle that assets be distributed equally among creditors of similar standing," we should be inclined to extend comity. Remington, 830 F.2d at 1271 (citations omitted). On the other hand, federal courts must be careful not to force "American creditors to participate in foreign proceedings in which their claims will be treated in some manner inimical this country's policy of equality." Id. (citations omitted). See also Republic of the Philippines v. Westinghouse Elect. Corp., No. 93-5672, slip op. at 18 (3d Cir. Dec. 20, 1994) ("principles of comity cannot compel a domestic court to uphold foreign interests at the expense of the public policies of the forum state").

Thus, Remington instructs that courts, when deciding whether to extend comity to foreign bankruptcy proceedings by staying a case before it, should ascertain whether the foreign

bankruptcy court is a duly authorized tribunal, whether the foreign bankruptcy law shares our policy of equal distribution of assets, and whether forcing the United States creditor to prosecute its claim in the foreign court would be "in some manner inimical to this country's policy of equality."  Drawing on Remington, we conclude that a party seeking a stay of a judicial proceeding in this country based on a foreign bankruptcy proceeding must demonstrate the following: (1) the foreign bankruptcy court shares our policy of equal distribution of assets; and (2) the foreign law mandates the issuance or at least authorizes the request for the stay.  If the party urging that comity be afforded the foreign proceedings makes such a prima facie showing, the district court should consider the matter further and should not dismiss the request out of hand without explaining its ruling.  In this process it may be necessary for the court to conduct an evidentiary hearing with expert testimony to ascertain foreign law and procedures.  These matters, after all, may be in dispute, as they are here.  See Grupo Protexa, S.A. v. All American Marine Slip, 20 F.3d 1224, 1239 (3d Cir.), cert. denied, 115 S.Ct. 481 (1994); Drexel Burnham Lambert Group Inc. v. Galadari, 777 F.2d 877, 881 (2d Cir. 1985).

Accordingly, we now evaluate whether PGMex presented a prima facie case for a stay.  As to the first element, PGMex presented an opinion from a Mexican attorney, stating that under the MBSPL "[t]he obligation to present all claims against the common debtor is based on the principle to preserve the company and its possessions which should not be distributed in prejudice

of all creditors, and in other principle based on the universality and territoriality of the suspension of payments and the equitable treatment of all creditors." App. at 1105 (emphasis deleted). While this statement is not completely free from ambiguity, the attorney seems to be stating that under the MBSPL, all creditors are treated equally. Accordingly, we believe that this statement demonstrates that the foreign bankruptcy court shares our policy of equal distribution of assets.

As to the second element, the attorney's opinion stated that Article 409 of the MBSPL mandates the stay of the district court proceeding. While the attorney acknowledged that there are exceptions to the stay provisions, we understand his opinion to state that the exceptions are not applicable here. Accordingly, PGMex presented a prima facie case that Mexican law mandates a stay of the district court proceedings. While PGC presented a legal opinion which differs from that submitted by PGMex, at this stage of the proceedings in which we are concerned only with whether PGMex has presented a prima facie case, we have no need to describe that opinion in detail.

In sum, we therefore hold that inasmuch as the Letter Rogatory was properly before the district court, and PGMex presented a prima facie case for a stay of the district court proceedings based on according comity to the Mexican proceedings, the district court abused its discretion when it granted summary judgment without even discussing the letter or making any factual findings on the comity issue. See Drexel Burnham Lambert, 777

F.2d at 881 ("We conclude that the facts relating to the Dubai proceedings and its consonance with domestic law and public policy were sufficiently in dispute to warrant further inquiry."). While the district court might have been able to articulate a reason for its actions, it did not do so. Accordingly, we will vacate the order for summary judgment and will remand the case to the district court. On remand, the district court should determine whether according comity to the Mexican proceedings "would be prejudicial to the interest of the" United States. In making that inquiry, the court should assess, along with any other issues it finds relevant, the following issues: (1) whether the Mexican court in which the proceedings are pending is a duly authorized tribunal; (2) whether the MBSPL provides for equal treatment of creditors; (3) whether a stay would be "in some manner inimical to this country's policy of equality"; and (4) whether PGC will be prejudiced by the stay.[7] In the event that the court denies comity, it may reconsider the motion for summary judgment or take such further proceedings as are then appropriate.

### III.  CONCLUSION

For the foregoing reasons, the judgment of January 19, 1994, is vacated and the matter is remanded to the district court for further proceedings consistent with this opinion.

---

[7]. Conceivably, on remand the district court might conclude that it should transfer the proceedings to the Mexican court. We do not reach that issue and thus express no opinion on the point.

_____

ROTH, <u>Circuit Judge</u>, dissenting: No. 94-1054

Although I share the majority's view that the district court should have articulated its reasons for denying the Letter Rogatory's request for comity, I reach a different decision as to the action we should take in view of the district court's failure to rule on comity. I base my conclusion on a combination of a desire for judicial economy and a determination, from the record before us, that it would have been inappropriate to grant the Letter Rogatory, extending comity to the Mexican bankruptcy court. I therefore respectfully dissent.

In reaching this conclusion, I, too, place great emphasis on <u>Remington Rand v. Business Systems, Inc.</u>, 830 F.2d 1260 (3d Cir. 1987). Yet, my reading of <u>Remington</u> does not lead to the broad view of comity advocated by the majority. In <u>Remington</u>, our pronouncements on the importance of comity are specifically confined to the district court's attempt to attach foreign assets:

> To the extent that the district court order seeks to attach BSI assets in the United States, it will not be disturbed. No international trappings surround the district court's imposition of a constructive trust over assets located in the United States. We see no aspects of comity implicated here. The same is not true, however, insofar as the attachment of foreign assets is concerned. We believe that before that

> aspect of the judgment can be sustained, certain
> conditions precedent . . . must first be satisfied.

Id. at 1272.  Importantly, the doctrine of comity did not prevent the Court in Remington from affirming certain decisions reached by the district court, including the district court's findings that BSI had misappropriated trade secrets and that BSI must return certain confidential "know how" documents to Remington U.S.  These decisions were upheld, even though there is no indication in Remington that the district court specifically indicated why it chose to decide these matters rather than defer to the bankruptcy proceeding simultaneously underway in The Netherlands.

In my view, the issues argued on summary judgment in the instant matter resemble the issues that were not precluded by considerations of comity in Remington.  Specifically, PGC seeks a declaratory judgment on PGMex's rights to use PGC's trademarks and technical material, to manufacture products from PGC's designs, and to act as PGC's sales representative in Mexico.  Because such a determination does not implicate assets held by PGMex in Mexico, the district court's action does not affect the ability of a Mexican bankruptcy court to effectively distribute PGMex's assets to its creditors.  Accordingly, the district court would not have abused its discretion if it had decided that comity did not preclude it from deciding the merits of the parties' summary judgment motions.

Additionally, concerns for judicial economy weigh against remanding the matter without reaching the merits on appeal.  The district court's grant of summary judgment was the focus of the briefing and argument before this Court.  We are familiar with the issues, and they are ripe for a decision.

Because we can decide these issues, because comity should not, under Remington, preclude us from deciding them, and because judicial resources would not best be served by simply vacating summary judgment without deciding the issues, I conclude that we should rule on the district court's grant of summary judgment.  My review of the parties' motions for summary judgment reveals that numerous issues of material fact exist, including whether the parties orally modified their sales and technical agreements at the September 24, 1990 meeting.  Accordingly, I would reverse the district court's grant of summary judgment in favor of PGC on its declaratory judgment complaint and its grant of summary judgment against PGMex on its counterclaims, and I would remand the case to the district court for further proceedings.