**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3305
_____

VERTIV, INC.; VERTIV CAPITAL, INC.;
and GNARITIS, INC.,

Appellants

v.

WAYNE BURT PTE, LTD., and TGS MAHESH
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:20-cv-00363)
District Judge: Honorable Georgette Castner
_____

Argued: September 6, 2023

Before: CHAGARES, *Chief Judge*,
HARDIMAN and FREEMAN, *Circuit Judges*.

(Filed: February 1, 2024)

Robert T. Szyba      [ARGUED]
Seyfarth Shaw
620 Eighth Avenue
New York, NY 10018

    *Counsel for Appellants*

Patrick T. Collins     [ARGUED]
Skoloff & Wolfe
293 Eisenhower Parkway
Suite 390
Livingston, NJ 07039

    *Counsel for Appellee*

---

**OPINION OF THE COURT**

---

FREEMAN, *Circuit Judge*.

This case originated as a simple breach-of-contract claim. But then the District Court learned that the defendant company was in liquidation proceedings (analogous to United States bankruptcy proceedings) in Singapore. The District Court was asked to dismiss the action out of principles of international comity, and it did so despite little recent guidance from this Court. We now clarify the standard courts must apply when deciding whether to abstain from adjudicating a case in deference to what is essentially a pending foreign bankruptcy proceeding. We will vacate the order of the District Court and remand to give it the opportunity to apply this new guidance in the first instance.

I

Vertiv, Inc., Vertiv Capital, Inc., and Gnaritis, Inc. (together "Vertiv") are Delaware corporations headquartered in New Jersey. Wayne Burt, PTE Ltd. ("Wayne Burt") is a Singaporean corporation with a primary place of business in Singapore.

In January 2020, Vertiv sued Wayne Burt and Cetex Petrochemicals LTD ("Cetex") in the United States District Court for the District of New Jersey. Vertiv alleged that Wayne Burt had defaulted on a loan and now owed Vertiv the full value of the principal and interest due on the loan along with the 46.82% of the total shares of Cetex stock pledged as security. Vertiv sought damages and a declaratory judgment. One of Wayne Burt's directors promptly acknowledged the debt and informed the District Court that judgment for Vertiv was proper. So just two weeks after docketing the complaint, the District Court signed a consent order granting judgment for Vertiv. The judgment awarded Vertiv $29,290,000 in damages, and it declared that Vertiv owned the shares of Cetex stock that Wayne Burt had pledged as security for the loan.[1]

In September 2020, Vertiv filed a second suit against Wayne Burt. It was identical to the first except that, in the place of Cetex, it named Wayne Burt Petro Chemical Private Limited as a defendant along with Wayne Burt. The parties

---

[1] Three weeks later, the District Court granted the parties' joint request to enter an amended judgment that included more factual detail that the parties needed to enforce the judgment in India.

3

again agreed to a consent judgment, and the District Court entered judgment in Vertiv's favor in November 2020.

But these cases would not be resolved so easily. In February 2021, Wayne Burt moved to vacate both judgments under Federal Rule of Civil Procedure 60(b). It informed the District Court that it was in liquidation proceedings in Singapore—proceedings that began before Vertiv filed its suits in the District Court. It contended that the officers who purportedly consented to the judgments in the District Court lacked the authority to act on Wayne Burt's behalf because, under Singapore law, only the Singaporean court-appointed Liquidator could do so.

In its Rule 60(b) motions (which were filed by the Liquidator on the company's behalf), Wayne Burt also asserted that the loans underlying the judgments in the District Court never existed. It attached evidence in support of that contention. And it emphasized that it could not have intervened earlier to oppose the judgments because the Liquidator did not have notice of the proceedings.

In July 2021, the District Court granted the Rule 60(b) motions and vacated both judgments. It found that the Liquidator "presented substantial and compelling evidence of the fraudulent nature of these loans" and that the evidence, "at a minimum, fits the definition of 'misconduct' under Rule 60(b)(3)." App. 582; Fed. R. Civ. P. 60(b)(3) (permitting courts to grant a party relief from a final judgment based on "fraud . . . , misrepresentation, or misconduct"). But it did not grant relief under Rule 60(b)(3) because the motions may have been untimely if filed on that basis. *See* Fed. R. Civ. P. 60(c) (providing that a Rule 60(b)(3) motion "must be made within

4

a reasonable time" and "no more than a year after the entry of the judgment" that it seeks to vacate). Instead, it vacated the judgments as void because the Wayne Burt officers who consented to the judgments were not authorized to represent Wayne Burt—only the Liquidator was so authorized. *See* Fed. R. Civ. P. 60(b)(4) (permitting courts to grant a party relief from a final judgment that is void); Fed. R. Civ. P. 60(c) (providing that a Rule 60(b)(4) motion "must be made within a reasonable time"). Having vacated the judgments, the District Court reopened both civil actions.

The matters were then consolidated, and Vertiv filed the operative amended complaint in September 2021. It brought the same claims as before against Wayne Burt. It also brought a breach-of-contract claim against one of Wayne Burt's directors, TGS Mahesh, alleging that he had personally guaranteed the loans.

In November 2021, Wayne Burt (through the Liquidator) moved to dismiss Vertiv's claims under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[2] It asked the District Court to dismiss the amended complaint either (1) on international comity grounds in deference to the ongoing liquidation proceedings in Singapore, or (2) because the court lacked personal jurisdiction over the company. Vertiv opposed the motion, arguing that extending comity to the Singaporean proceedings was inappropriate under our precedent. It also

---

[2] Mahesh answered Vertiv's complaint, and he filed a cross-claim against Wayne Burt seeking indemnification to cover his personal guarantee of the loans. Wayne Burt moved to dismiss Vertiv's claims and Mahesh's cross-claim.

argued that the loan documents' forum selection clauses gave the District Court personal jurisdiction over Wayne Burt.

The District Court resolved the motion on international comity grounds, without addressing personal jurisdiction. Because the parties disagreed about the appropriate test to apply when addressing international comity, the District Court addressed both of the tests the parties suggested. It held that extending comity to the Singaporean court proceedings was appropriate under either test.

First, the District Court applied the four-factor test articulated in *Austar International, Ltd. v. Austarpharma LLC*, 425 F. Supp. 3d 336 (D.N.J. 2019). It concluded that all four factors supported extending comity. Specifically, it concluded that (1) Singapore has jurisdiction over Wayne Burt's liquidation; (2) the Singapore liquidation and this action are parallel, and Vertiv can make claims as Wayne Burt's creditors in the Singapore liquidation proceedings; (3) extraordinary circumstances necessitate dismissal of this action; and (4) United States policy supports dismissal of this action.

Next, the District Court addressed our test from *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.*, 44 F.3d 187 (3d Cir. 1994). It noted our holding in *Philadelphia Gear* that "a party seeking a stay of a judicial proceeding in this country based on a foreign bankruptcy proceeding must demonstrate the following: (1) the foreign bankruptcy court shares our policy of equal distribution of assets; and (2) the foreign law mandates the issuance or at least authorizes the request for the stay." *Id.* at 193. It found that those two factors were satisfied, so it concluded that extending comity was appropriate. It granted Wayne Burt's motions to

dismiss the amended complaint, dismissed the amended complaint with prejudice, and ordered the Clerk's Office to close the case.  Vertiv timely appealed.[3]

## II

The District Court had diversity jurisdiction under 28 U.S.C. § 1332, and we have subject-matter jurisdiction under 28 U.S.C. § 1291.

We review a district court's "extension or denial of comity" to a foreign proceeding for abuse of discretion, *Phila. Gear*, 44 F.3d at 191, and we review findings of fact underlying the decision for clear error, *Remington Rand Corp. Del. v. Bus. Sys. Inc.*, 830 F.2d 1260, 1266 (3d Cir. 1987).  A district court abuses its discretion if its ruling is based on an erroneous view of the law.  *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014).

## III

### A

Vertiv appeals the District Court's decision to extend comity to Wayne Burt's insolvency proceeding in Singapore. "Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another." *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971).  It is a practice intended to give "due regard both to international duty and convenience, and to

---

[3] The District Court's order dismissed Vertiv's complaint in its entirety.  It also dismissed Mahesh's cross-claim against Wayne Burt.  Mahesh did not appeal.

the rights of [a nation's] citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

This case involves adjudicatory comity, which is a discretionary act of deference to a foreign court. *Mujica v. AirScan Inc.*, 771 F.3d 580, 599 (9th Cir. 2014) (discussing "adjudicatory comity" or "comity among courts").[4] Under this doctrine, a court asks if it should "decline to exercise jurisdiction over matters more appropriately adjudged elsewhere . . . ." *Id.* (quoting *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 817 (1993) (Scalia, J., dissenting in part)).

Adjudicatory comity arises only when a matter before a United States court is pending in or has resulted in a final judgment from a foreign court—that is, when there is or was a "parallel" foreign proceeding.[5] *See Spencer v. Kugler*, 454

---

[4] Adjudicatory comity is distinct from prescriptive comity, which refers to "the respect sovereign nations afford each other by limiting the reach of their laws." *See Hartford Fire*, 509 U.S. at 817; *Mujica*, 771 F.3d at 598–99 (discussing the two distinct international comity doctrines).

[5] Adjudicatory comity principles arise in at least three contexts. *See Diorinou v. Mezitis*, 237 F.3d 133, 139–40 (2d Cir. 2001). Federal courts have considered whether: (1) to abstain from exercising jurisdiction in deference to a pending foreign proceeding, *see, e.g.*, *Phila. Gear*, 44 F.3d 187; (2) to enforce a judgment rendered by a foreign tribunal, *see, e.g.*, *Somportex*, 453 F.2d 435; and (3) to preclude a particular claim or issue

F.2d 839, 847 n.17 (3d Cir. 1972) ("[O]ne court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."); *Gross v. German Found. Indus. Initiative*, 456 F.3d 363, 393 (3d Cir. 2006) (abstention "based on principles of international comity" may be due to a "foreign judgment or ongoing proceeding in a foreign tribunal"). When that prerequisite is satisfied, the United States court then reviews the procedures and the system of laws in the foreign court and assesses whether the foreign proceedings are likely to (or likely did) result in the impartial administration of justice. *Hilton*, 159 U.S. at 202–03.

The Supreme Court has held that foreign bankruptcy proceedings are particularly deserving of adjudicatory comity.[6] In *Canada Southern Railway Company v. Gebhard*, the Court

---

previously adjudicated by a foreign tribunal, *see, e.g.*, *Diorinou,* 237 F.3d 133. The test we announce today applies in the first context.

[6] We use the term "bankruptcy" to encompass the full array of insolvency proceedings, including (but not limited to) reorganization and liquidation. We recognize that many foreign nations do not use the term "bankruptcy." *See* American Law Institute, Global Principles for Cooperation in Int'l Insolvency Cases § 1 intro. n.2 (2012) ("[I]n worldwide English-language usage 'insolvency' is the more common term for such proceedings where a business debtor is involved, whilst in the North American region 'bankruptcy' is at least as often used for business proceedings as well as those involving consumers.").

reversed judgment for American creditors in a domestic suit because its resolution interfered with a railway corporation's reorganization proceedings in Canada. 109 U.S. 527, 532, 537–40 (1883). It observed that the railway corporation had been formed in Canada, had a principal place of business in Canada, and derived its powers to contract from the Canadian government. *Id.* at 538. And when the corporation could not meet its financial obligations, it turned to Canadian courts to pursue a reorganization in the interest of its creditors and other parties in interest. *Id.* at 538–39. Given all this, the Supreme Court held that the foreign reorganization proceedings were "in entire harmony with the spirit of bankrupt[cy] laws, the binding force of which, upon those who are subject to the jurisdiction, is recognized by all civilized nations." *Id.* at 539. And it explained why American parties should be bound by the Canadian bankruptcy proceedings: "[u]nless all parties in interest, wherever they reside, can be bound by the arrangement which it is sought to have legalized, the scheme may fail." *Id.* Thus, it concluded that the actions in the United States courts "cannot be maintained." *Id.* Instead, "the true spirit of international comity requires that [bankruptcy] schemes of this character, legalized at home, should be recognized in other countries." *Id.*; *see also Stonington Partners, Inc. v. Lernout & Hauspie Speech Products N.V.*, 310 F.3d 118, 126 (3d Cir. 2002), as amended (Nov. 12, 2002) ("The principles of comity are particularly appropriately applied in the bankruptcy context because of the challenges posed by transnational insolvencies . . . .").

Two of our decisions have addressed the relevant inquiries for courts deciding whether to abstain on international comity grounds in deference to a pending foreign bankruptcy proceeding. In our 1987 *Remington Rand* opinion,

10

we observed that comity is generally supported where the foreign country's bankruptcy laws share the "fundamental principle" of the United States bankruptcy laws: "that assets be distributed equally among creditors of similar standing." 830 F.2d at 1271. And we noted the corollary proposition that district courts must "guard against forcing American creditors to participate in foreign proceedings in which their claims will be treated in some manner inimical to this country's policy of equality." *Id.* (cleaned up); *see also id.* at 1266 (holding that the Bankruptcy and District Courts did not abuse their discretion by denying comity to a foreign bankruptcy proceeding that did not afford a United States creditor due process or the opportunity to be heard); *Hilton*, 159 U.S. at 202–03 (identifying relevant indicia of due process for the comity inquiry, including the competent jurisdiction of the foreign court and the impartial, regular adjudication procedures conducted without prejudice or fraud). We further emphasized that section 304 of the United States Bankruptcy Code "expresses Congressional recognition of an American policy favoring comity for foreign bankruptcy proceedings." 830 F.2d at 1271; 11 U.S.C. § 304 (2000) (authorizing courts to stay United States actions against companies or property subject to a foreign insolvency proceeding) (*repealed by* Pub. L. 109–8. Title VIII, § 802(d)(3) (2005)). Section 304 has since been repealed and replaced by Chapter 15 of the United States Bankruptcy Code. *See In re ABC Learning Centres Ltd.*, 728 F.3d 301, 306 (3d Cir. 2013). But Chapter 15, like its predecessor, favors extending comity to foreign insolvency proceedings. 11 U.S.C. §§ 1509, 1515–1524 (directing United States bankruptcy courts to recognize and grant comity to certain foreign proceedings). Once a foreign proceeding is recognized under Chapter 15, the automatic stay provided by 11 U.S.C. § 362 of the Bankruptcy Code applies to the foreign

11

debtor and its property "within the territorial jurisdiction of the United States."  11 U.S.C. § 1520(a)(1).

We gave more specific guidance about the comity inquiry in our 1994 *Philadelphia Gear* opinion.  44 F.3d 187. Drawing on *Remington Rand*, we held that the party seeking a stay of a proceeding in the United States based on comity to a pending foreign bankruptcy proceeding must make a *prima facie* showing that (1) "the foreign bankruptcy law shares our policy of equal distribution of assets," and (2) "the foreign law mandates the issuance or at least authorizes the request for the stay."  44 F.3d at 193.  If the party urging comity makes this *prima facie* showing, the court must then ask additional questions to determine "whether according comity to the [foreign] proceedings would be prejudicial to the interest of the United States."  *Id.* at 194 (quotation marks omitted).  We remanded to the District Court so it could address four specific questions: whether (1) the foreign bankruptcy proceedings are in a duly authorized tribunal, (2) the foreign bankruptcy proceedings provide for equal treatment of creditors, (3) the foreign court would treat the United States creditor in some manner inimical to this country's policy of equality, and (4) the party opposing comity would be prejudiced by a stay of the United States proceeding.  *Id.*  We also instructed the court to address "any other issues it finds relevant" to the comity inquiry.  *Id.*

B

Read together, *Remington Rand* and *Philadelphia Gear* lay out the broad inquiries a United States court must make when deciding whether to abstain from exercising its jurisdiction in deference to a pending foreign bankruptcy

12

proceeding. It has been nearly three decades since we addressed this topic, and updated guidance is warranted. *See Hembach v. Quikpak Corp.*, No. CIV. A. 97-3900, 1998 WL 54737, at *3 (E.D. Pa. Jan. 8, 1998) (observing that *Philadelphia Gear*'s four mandatory considerations are "somewhat redundant[]" to the requirements for a *prima facie* showing). So today we provide additional direction to courts considering whether to extend adjudicatory comity to a pending foreign bankruptcy proceeding.

As a threshold matter, United States courts only consider extending adjudicatory comity to a pending proceeding that is "parallel." *Spencer*, 454 F.2d at 847 & n.17; *Gross*, 456 F.3d at 393 (discussing the prerequisites for international comity); *Phila. Gear*, 44 F.3d at 193–94 (affirming the extension of adjudicatory comity to a parallel proceeding in a Mexican court). So we must clarify when a foreign insolvency proceeding is "parallel" to a civil action in a United States court.

Although adjudicatory comity is a type of abstention, we cannot adopt the definition of "parallel" that we use for purposes of *Colorado River* abstention. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814–17 (1976) (discussing circumstances that may permit a federal court to relinquish jurisdiction in deference to a state court proceeding). In the *Colorado River* abstention context, "cases are parallel when they involve the same parties and claims." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017) (citation omitted). But that definition of "parallel" is inapposite when addressing foreign bankruptcy matters that may bear little resemblance to a standard civil action in the United States. *Cf.* American Law Institute, Global Principles

13

for Cooperation in Int'l Insolvency Cases, § 2 intro. (2012) (recognizing the "widely differing legal traditions and practices" of "the nations of the world with respect to insolvency law and policy").

So we draw on the inquiry that United States bankruptcy courts make to decide whether a civil action is "related to" a United States bankruptcy proceeding. This inquiry determines whether a bankruptcy court has "non-core" subject matter jurisdiction over a matter—which "is the broadest of the potential paths to bankruptcy jurisdiction." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 163 (3d Cir. 2004). "An action . . . is 'related to' a bankruptcy proceeding if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [if the outcome] in any way impacts upon the handling and administration of the bankrupt estate." *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012) (cleaned up). When such a related action arises, the Bankruptcy Court "submit[s] proposed findings of fact and conclusions of law to the district court" to resolve the dispute because of its effect on the debtor or the estate.[7] 28 U.S.C. § 157(c)(1).

---

[7] Issues raised in these non-core proceedings are "related to" the bankruptcy proceedings when they either "invoke[] a substantive right provided by title 11" or "by [their] nature could arise only in the context of a bankruptcy case." *In re Resorts Int'l*, 372 F.3d at 163 (quotation marks omitted); *see generally In re Essar Steel Minn. LLC*, 47 F.4th 193, 197–98 (3d Cir. 2022).

Congress established "related to" jurisdiction "to grant bankruptcy courts comprehensive jurisdiction so that they could deal efficiently and expeditiously with matters connected with the bankruptcy estate." *In re Resorts Int'l*, 372 F.3d at 163 (quotation marks omitted). As the outer boundary of bankruptcy jurisdiction, "related to" proceedings reflect the United States' view of the "broader universe of all proceedings" that are sufficiently connected to the bankruptcy proceeding such that they would benefit from a bankruptcy judge's expertise. *In re Exide Techs.*, 544 F.3d 196, 205 (3d Cir. 2008). We use this broad definition for a "related to" proceeding here because of the wide variation in how foreign bankruptcy proceedings and their associated legal systems operate. It intends to capture relevant domestic proceedings that may affect the foreign debtor's estate regardless of how the foreign bankruptcy proceeding is structured.

So we conclude that a civil action in a United States court is "parallel" to a foreign bankruptcy proceeding when: (1) the foreign bankruptcy proceeding is ongoing in a duly authorized tribunal while the civil action is pending before the United States court, *Phila. Gear*, 44 F.3d at 193; and (2) the outcome of the United States civil action may affect the debtor's estate.[8] The second factor is flexible and must be

---

[8] The definition we adopt here is consistent with how the Second Circuit addresses the question of parallel proceedings in the international bankruptcy context. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 427–28 (2d Cir. 2005) (concluding that a foreign bankruptcy proceeding is parallel to a domestic action when the claim before the United States court involves the debt at issue in the foreign proceedings).

15

context specific, but our precedent analyzing whether a non-core proceeding is related to a bankruptcy proceeding may provide useful guidance.

Once the United States court is satisfied that the foreign bankruptcy proceeding is parallel, the party seeking the extension of comity must make its *prima facie* case. As we held in *Philadelphia Gear*, a party does so by showing that (1) "the foreign bankruptcy law shares our policy of equal distribution of assets," and (2) "the foreign law mandates the issuance or at least authorizes the request for the stay." 44 F.3d at 193.

Upon finding a *prima facie* case for comity, the United States court must make additional inquiries about the foreign bankruptcy proceeding's fairness to the parties and compatibility with United States public policy preferences. *Remington*, 830 F.2d at 1266, 1271. In *Philadelphia Gear*, we instructed the District Court to address four questions, some of which overlapped with the requirements for a *prima facie* case. 44 F.3d at 194. So we now elaborate upon the questions courts must address after a party has made a *prima facie* case for comity.

*Philadelphia Gear* instructed United States courts to make four inquiries: whether (1) the foreign bankruptcy proceeding is taking place in a duly authorized tribunal, (2) the foreign bankruptcy court provides for equal treatment of creditors, (3) extending comity would be "in some manner inimical to this country's policy of equality," and (4) the party opposing comity would be prejudiced. *Id.* The first of these inquiries requires no elaboration and is necessarily satisfied if the foreign proceeding is parallel to the domestic action. The

16

second inquiry, which addresses the equal treatment of creditors, relates to but differs from the *prima facie* case requirement that the foreign bankruptcy tribunal have a policy for equal distribution of assets. At the *prima facie* stage, a court asks whether the foreign bankruptcy tribunal provides for "equality of distribution among creditors of equal priority." 7 Collier on Bankruptcy ¶ 1100.01 (16th ed. 2023). But for the subsequent inquiry, the United States court assesses whether "any plan of reorganization is fair and equitable as between classes of creditors that hold claims of differing priority or secured status." *Id.*

The third inquiry—ensuring that the foreign proceedings' actions are consistent with the United States' policy of equality—warrants a deeper discussion. It functions as a catch-all consideration of whether "forcing American creditors" to participate in the foreign bankruptcy proceedings would be unfair because those creditors receive substantially fewer protections to ensure equal treatment than they would in a domestic proceeding. *Remington*, 830 F.2d at 1271 (quoting *Banque De Financement, S.A. v. First Nat'l Bank of Boston*, 568 F.2d 911, 921 (2d Cir. 1977)).[9] To inform this inquiry, we

---

[9] In *Banque De Financement*, the Second Circuit considered whether the bankruptcy court erred in dismissing a bankruptcy petition under a prior provision of the Bankruptcy Act permitting it to suspend or dismiss a bankruptcy action after giving "regard to the rights and convenience of local creditors." 568 F.2d at 921 (considering the application of former Bankruptcy Act § 2a(22) and Bankruptcy Rule 119). It noted that the provision did not require comparing the general rights (including property rights) a creditor would have under

turn for guidance to Second Circuit authority. That court has articulated "indicia of procedural fairness" in foreign bankruptcy proceedings that demonstrate principles of equality are present and enforced:

> (1) whether creditors of the same class are treated equally in the distribution of assets; (2) whether the liquidators are considered fiduciaries and are held accountable to the court; (3) whether creditors have the right to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication; (4) whether the liquidators are required to give notice to the debtors['] potential claimants; (5) whether there are provisions for creditors['] meetings; (6) whether a foreign country[']s insolvency laws favor its own citizens; (7) whether all assets are marshalled before one body for centralized distribution; and (8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims.

*Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 249 (2d Cir. 1999). While certain factors are duplicative of considerations already discussed, this non-exhaustive list can

---

foreign law with United States law and dismissing the United States petition if the foreign law was more favorable to the American creditor. *Id.* Rather, the sole consideration was whether the equality principles underlying United States bankruptcy proceedings were sufficiently reflected in the foreign proceedings such that American creditors would not be disadvantaged. *Id.*

serve as a guide for United States courts as they assess the full scope of equality concerns related to foreign bankruptcy proceedings. But we emphasize that foreign bankruptcy proceedings need not function identically to similar proceedings in this country in order to be consistent with the United States' policy of equality. *See Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993).

And United States courts will not address a foreign proceeding's equality factors in a vacuum—those factors are relevant because of their effect on the parties in the United States civil action. *See Finanz*, 192 F.3d at 249 ("[A]lthough the Brazilian proceeding apparently does not require individualized notice, Finanz received actual notice of the Brazilian proceeding from the general manager of the New York Branch and subsequently filed a timely claim. Accordingly, the District Court correctly concluded that there was no due process violation."). Thus, they bear on (but do not limit the scope of) the fourth *Philadelphia Gear* factor: prejudice to the party opposing the extension of comity to the foreign bankruptcy proceeding. Specifically, at the fourth step, the same factors used to evaluate whether the foreign jurisdiction's pending proceedings are inimical to this country's policy of equality under factor three are applied to the specific party opposing comity to evaluate whether such protections have been available to that party in practice (as applicable). The United States court must assess whether the pending foreign bankruptcy proceedings provide due process protections for the party opposing the extension of comity. *Remington*, 830 F.2d at 1266, 1271. For instance, a United States court is well within its discretion to deny the extension of comity to foreign proceedings that deny "notice and

19

opportunity to be heard" to a party opposing comity. *See id.* at 1266.

Finally, we reiterate that this non-exhaustive list of factors is intended to inform one overarching question: whether extending comity in the given circumstances "would be prejudicial to the interest[s]" of the United States. *Phila. Gear*, 44 F.3d at 191, 194. As discussed above, Chapter 15 of the United States Bankruptcy Code provides the United States' policy positions on foreign bankruptcy proceedings and endorses both unitary bankruptcy proceedings and deference to ongoing foreign proceedings. *ABC Learning Centres*, 728 F.3d at 304–06. Absent a change to the United States Bankruptcy Code or a specific policy position regarding the foreign jurisdiction where the bankruptcy proceedings are taking place, Chapter 15 will generally favor deference to parallel bankruptcy proceedings. But comity is a fact-dependent inquiry, so a United States court may consider "any other issues it finds relevant" to the interests of the United States in relation to a given foreign proceeding. *Phila. Gear.*, 44 F.3d at 194.

In future cases, the refreshed *Philadelphia Gear* test that we articulate today shall govern adjudicatory comity with regard to pending foreign bankruptcy proceedings. The test used by a district court in *Austar* is inapplicable here.[10]

---

[10] *Austar* draws on precedent from sister circuits that apply the "extraordinary circumstances" factors from *Colorado River* to international proceedings. *Compare Austar Int'l Ltd*, 425 F. Supp. 3d at 363, *with Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir.

C

When a United States court decides to extend comity to a foreign bankruptcy proceeding, it ordinarily should stay the civil action or dismiss it without prejudice. *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 181 (3d Cir. 2006) ("[D]ismissal without prejudice[] is consistent with this Court's notions of comity in the international arena . . . ."). Both of these measured actions protect the substantial rights of the parties. They also leave open an avenue for a United States creditor to resume its civil action if changed circumstances counsel against the continued extension of comity. *Cf. Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 96 (2d Cir. 2006) ("As a lesser intrusion on the principle of obligatory jurisdiction, which might permit the district court a window to determine whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties, . . . a stay is an alternative that normally should be considered before a comity-based dismissal is entertained.").

---

2009); *Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 93 (2d Cir. 2006); *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000); *Ingersoll Milling Mach. Co.*, 833 F.2d 680, 684 (7th Cir. 1987). But *Colorado River*'s admonition that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" when assessing whether to abstain in deference to parallel state proceedings, 424 U.S. at 817, is inapplicable in the foreign bankruptcy context given *Canada Southern Railway Company*'s guidance that fair bankruptcy proceedings should be recognized in foreign countries just as they are in the United States, *Can. S. Ry. Co.*, 109 U.S. at 539.

D

Turning to Vertiv's appeal, we begin with the threshold question of whether Vertiv's case against Wayne Burt is "parallel" to the latter's insolvency proceedings in Singapore. Although the District Court has not had an opportunity to address parallelism using the definition provided above, we need not remand for a decision on that issue because parallelism is established by the undisputed facts. The parties agree that Wayne Burt is subject to ongoing liquidation proceedings in Singapore, and no party has questioned Singapore's jurisdiction over the liquidation proceedings. Therefore, it is plain that Wayne Burt's foreign bankruptcy proceeding is ongoing in a duly authorized tribunal while Vertiv's civil action against Wayne Burt is pending in the District Court. It is also plain that Wayne Burt, as a defendant in the civil action, is a necessary party to the action in the District Court. And the outcome of this action in which Vertiv seeks, among other things, $29,290,000 in damages from Wayne Burt would plainly affect Wayne Burt's estate in the Singapore liquidation. So the matters are parallel for purposes of this comity inquiry.

Moving on to the *prima facie* showing required under *Philadelphia Gear*, we discern no error with the District Court's findings: Singapore shares the United States' policy of equal distribution of assets among similarly situated creditors, and Singapore law authorizes a stay or dismissal of Vertiv's civil action against Wayne Burt. Wayne Burt has presented no evidence to counter the District Court's finding about equal

22

distribution of assets.[11]   And it is undisputed that Singapore law prohibits any action or proceeding against Wayne Burt without leave of the Singapore court.  *See* App. 107 (citing § 262(3) of Singapore's Companies Act, Chap. 50 ("When a winding up order has been made or a provisional liquidator has been appointed, no action or proceeding shall be proceeded with or commenced against the company except (a) by leave of the Court; and (b) in accordance with such terms as the Court imposes.")).   Because no such leave was granted to Vertiv, dismissal of Vertiv's action is authorized by Singapore law.[12]

---

[11] We disagree with Vertiv's contention that it was unable to rebut Wayne Burt's assertions about equal distribution of assets under Singapore law.  Wayne Burt first invoked the relevant provisions of Singapore law when its Liquidator sought to dismiss the September and November 2020 consent judgments as void, and it referenced these same provisions in its reply to Vertiv's response to its motion to dismiss.  Despite having ample opportunity to do so, Vertiv never presented the District Court with evidence disputing that Singapore law supports equal distribution of debtor assets during liquidation proceedings.

[12] In the District Court and on appeal, Vertiv attempts to undermine this finding by presenting evidence of the truism that Singapore law does not have extraterritorial effect.  These arguments are meritless.  A foreign jurisdiction need not have laws that apply beyond its borders for us to extend comity to its bankruptcy proceedings.  "That the laws of a country have no extraterritorial force is an axiom of international jurisprudence . . . ."  *Can. S. Ry. Co.*, 109 U.S. at 536.

We will remand to the District Court so it can apply the remainder of the applicable test in the first instance. Although the District Court addressed part of the *Philadelphia Gear* test, it did not complete the task; it stopped after finding that Wayne Burt made a *prima facie* case for comity to a foreign bankruptcy proceeding. So we will vacate the District Court's order dismissing Vertiv's action against Wayne Burt and remand for further proceedings.

We note that Wayne Burt's motion to dismiss raised international comity and personal jurisdiction as alternative grounds upon which to dismiss the complaint. Although we express no opinion on the merits of the personal jurisdiction arguments, we note that the District Court is not constrained on remand to resolve the motion on international comity grounds. If it chooses to do so, however, it will be guided by the refined bankruptcy-specific comity standard we articulate today.

\* \* \*

For the above reasons, we will vacate the District Court's order granting Wayne Burt's motion to dismiss Vertiv's complaint and remand for further proceedings.